IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GINGER LILLIAN CARLIN,<br><br>*Defendant*. | Case No. 1:22-mj-94<br><br>**UNDER SEAL** |

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Matthew Albertson, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I have been a law enforcement officer employed by the Prince George's County Police Department since December 6, 1999. I have been assigned to the Prince George's County Police Narcotic Enforcement Division since 2003. I am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been since July 5, 2011. I am currently assigned to Enforcement Group 42 of the Washington Division Office (WDO), located in the District of Columbia. During my employment as a TFO with DEA and as a police officer, I have investigated and assisted in the investigation of hundreds of narcotics violations. I have previously participated in investigations which have led to the arrest and conviction of narcotics dealers. I have received training in general law enforcement and in narcotics law enforcement from the Prince George's County Police Academy. I have received Basic Investigator School training and Advanced Surveillance School training from the DEA. I have received Advanced Investigator School training from the Prince George's County Police Department. I have also received training from the Multi-Jurisdictional Counter-Drug Task Force in Interview and

Interrogation, and Clandestine Laboratory Investigations Advanced. I have received Title 3 training given by the Baltimore Washington H.I.D.T.A. I have received training in cell phone investigations given by Geocell Communications Intelligence.

2. I have training and experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, surveillance, undercover operations, operations involving cooperating sources, clandestine laboratory investigations and a variety of other investigative tools available to law enforcement officers, including Title-III wiretaps. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of proceeds derived from the sale of narcotics, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques, among others: interviewing informants and cooperating sources; conducting physical surveillance; conducting short-term and long-term undercover operations, including reverse undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification data; conducting court-authorized electronic surveillance; preparing and executing search warrants which have led to substantial seizures of narcotics, firearms, and other contraband.

3. This affidavit is being submitted in support of a criminal complaint charging GINGER CARLIN ("CARLIN") with conspiracy to distribute fifty (50) grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

4. The facts and information contained in this affidavit are based on my personal knowledge of the investigation and information obtained from other state and federal law

enforcement officers. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of reports, documents, interviews, cellular phone downloads, search warrants, administrative subpoenas, and other physical evidence obtained during the course of this investigation.

5. This affidavit contains information necessary to support probable cause. The information contained in this affidavit is not intended to include each and every fact and matter observed by me or known to the government. All unindicted conspirators mentioned in this affidavit will be referred to in the masculine gender, regardless of their true gender.

## SUMMARY OF PROBABLE CAUSE

6. In and around June 2019, law enforcement received information that CARLIN and other co-conspirators individual one (I-1) and individual two (I-2) were distributing quantities of crystal methamphetamine within the Eastern District of Virginia and elsewhere. Specifically, law enforcement learned CARLIN was distributing quantities of crystal methamphetamine to I-1 and had done so on several occasions. I-1 then distributed the methamphetamine in and around Fredericksburg, Virginia.

### Law Enforcement Interview of I-2

7. During the week of August 11, 2019, law enforcement recovered drug paraphernalia from I-2 in Stafford County, Virginia, within the Eastern District of Virginia. I-2 waived his *Miranda* rights and agreed to speak to law enforcement. During the interview, which was video recorded, I-2 stated he and I-1 have been purchasing quarter-pound quantities (approximately four ounces) of methamphetamine from CARLIN approximately every three days since April 2019. Specifically, I-2 stated I-1 drives to Maryland to purchase methamphetamine from CARLIN, and then redistributes the methamphetamine to his various customers in Virginia.

I-2 told law enforcement that he introduced I-1 to CARLIN, and that he and I-1 worked together to sell methamphetamine.

8. Additionally, during the week of August 11, 2019, law enforcement obtained a state search warrant for real-time location data related to I-1 cellular phone (xxx) xxx-8068 (hereafter the "Target Phone").

Surveillance and Arrest of I-1 in Stafford County, Virginia

9. During the week of August 22, 2019, I-2 advised law enforcement that I-1 would be in possession of a substantial amount of methamphetamine. A review of real time location data for the Target Phone showed the phone entering Maryland and returning to Stafford County. Law enforcement conducted surveillance of I-1 during this time and observed him operating his 2007 Harley-Davidson motorcycle. Members of law enforcement observed I-1 drive his motorcycle into the parking lot of Affordable Suites of America, located at 204 University Blvd, Fredericksburg, Virginia. Members of law enforcement approached I-1 as he was getting off his motorcycle. Law enforcement utilized a narcotics detection dog ("K-9") and conducted a narcotic scan of the motorcycle I-1 was driving. The K-9 indicated to the odor of narcotics coming from the motorcycle. A law enforcement search of the motorcycle resulted in the recovery of four syringes, which appear to be used, in the left saddlebag attached to the motorcycle.

10. I-1 agreed to speak to law enforcement, and admitted that he had "a lot" of methamphetamine on him. The officers then searched I-1's person and located a Ziploc bag containing a substance consistent with methamphetamine. I-1 then waived his *Miranda* rights and agreed to speak to law enforcement. I-1 stated he had approximately 84 grams (roughly three ounces) of methamphetamine on his person, which he had purchased from CARLIN. Officers also found two more syringes and more than $3,000.00 dollars of U.S. currency on I-1's person.

11. I-1 consented to a search of his hotel room at the Affordable Suites of America located in Fredericksburg, Virginia as well as his cellular phone (the Target Phone).

12. A search of I-1's hotel room resulted in the seizure of approximately one ounce of methamphetamine, two digital scales and packaging materials. The methamphetamine was located within the safe, which was unlocked. All suspected methamphetamine recovered from I-1 was analyzed by the Virginia Department of Forensic Science and found to contain a total of approximately 108.54 grams of approximately 96% pure methamphetamine.

Review of the Target Phone

13. A review of the Target Phone, identified the following text messages exchanged between I-1 and CARLIN:

| DATE | FROM | MESSAGE |
|---|---|---|
| 4/7/2019 | I-1 | I'm going to need to see you again soon. Please call me when you can |
| 4/7/2019 | CARLIN | 3200…. |

14. Based on my training and experience, I-1 indicated that he needed to get more methamphetamine from CARLIN, when he wrote "I'm going to need to see you again soon." CARLIN responded "3200…." to indicate and confirm the price of methamphetamine that I-1 was looking to purchase. Information obtained from I-2 indicates that 3200 would represent the purchase of four ounces of methamphetamine (quarter pound) for $800 per ounce.

| DATE | FROM | MESSAGE |
|---|---|---|
| 6/9/2019 | 93557 | To send $500 to [CARLIN], enter Wells Fargo code 092967 online. We will not call or text you for this code. |
| 6/9/2019 | I-1 to CARLIN | Sent |
| 6/9/2019 | CARLIN | Cool when u coming |

15.     Based on my training and experience, I-1 received an automated text message from Wells Fargo Bank on June 9, 2019 with instructions on how to send money to CARLIN. I-1 then texted CARLIN, "Sent," to indicate that he sent money. CARLIN then wrote to I-1 "Cool when u coming" to ask I-1 when he would be coming to pick up the methamphetamine.

16.     The next day, June 10, 2019, the conversation between I-1 and CARLIN continued:

| DATE | FROM | MESSAGE |
|---|---|---|
| 6/10/2019 | I-1 | Can I come over in 90 minutes? |
| 6/10/2019 | CARLIN | Yes and I can do the same as last time |
| 6/10/2019 | I-1 | I'm here |

17.     Based on my training and experience, in the above table of text messages, I-1 sent "Can I come over in 90 minutes" to CARLIN, indicating he would like to purchase a quantity methamphetamine. CARLIN responded "Yes and I can do the same as last time," indicating that he is available to sell methamphetamine, the same amount that I-1 purchased during his last visit. I-1 sent the text message "I'm here" to CARLIN to indicate that he was at CARLIN's residence and ready to purchase methamphetamine.

18.     Approximately two months later, the conversation between I-1 and CARLIN continued:

| DATE | FROM | MESSAGE |
|---|---|---|
| 8/11/2019 | CARLIN | Let me know when you get over the bridge |
| 8/11/2019 | I-1 | I am over the bridge |
| 8/11/2019 | CARLIN | Come to the best western la plata room 215 |
| 8/11/2019 | I-1 | I'm here at the house. Still want me at the hotel? |

19.     Based on my understanding of this case, in the above table of text messages, CARLIN wrote "Let me know when you get over the bridge" to I-1, as CARLIN is aware that I-1 travels from Virginia to Maryland to purchase methamphetamine from CARLIN. I-1 responded,

6

"I am over the bridge," and shortly after, CARLIN asked I-1 to go to Room 215 at the Best Western in La Plata, Maryland, when he wrote "Come to the best western la plata room 215." Pursuant to an administrative subpoena, Best Western provided records to law enforcement, which reported that room 215 was registered to CARLIN on August 11, 2019.

20. In addition to the above text messages, law enforcement found stored on the Target Phone photographs of methamphetamine, photographs of digital scales with methamphetamine, photographs of large amounts of U.S. currency, and photographs of I-1 and I-2 holding methamphetamine and U.S. currency. The image dates recorded reflect the above described images were taken between March 2019 and August 2019. Below are some samples of photos found on I-1's cellular phone:



Interview of I-1

21. Contemporaneously with the search of I-1's hotel room, law enforcement continued to interview I-1. I-1 reported that he had been selling methamphetamine to various people in Virginia for a couple months. Specifically, I-1 stated that the three ounces of methamphetamine

recovered from his person by law enforcement was purchased from CARLIN for $2100. I-1 admitted to selling quarter-ounce quantities (approximately seven grams) of methamphetamine for $700, "eight-ball" quantities (approximately 3.5 grams, or one-eighth of an ounce) of methamphetamine for $400, and occasionally gram quantities of methamphetamine for $150.

22.     I-1 admitted to law enforcement that he had driven to the La Plata, Maryland area on approximately twelve occasions to purchase between one and three ounces of methamphetamine from CARLIN, whom he met in April 2019. I-1 stated he has met CARLIN at the Best Western in La Plata as well as at CARLIN's residence. I-1 stated the last time he met CARLIN to purchase methamphetamine was approximately a week and a half before he was stopped and interviewed.

Search Warrant of Parcel Package

23.     February 18, 2020, United States Postal Inspector (USPI) Jeremy Copeland informed investigators of a three (3) pound package in transit via the United States Postal Service (USPS) to CARLIN's residence at the time located at 1001 E. Patuxent Drive, La Plata, Maryland. USPI Jeremy Copeland further stated that the parcel (USPS Tracking #:9505512396520049615256) was a Priority Mail Two Day package paid for in cash.

24.     On February 20, 2020, USPI Christopher Johnson obtained the aforementioned package prior to its delivery to 1001 E Patuxent Drive, La Plata, Maryland. USPI Johnson with the assistance of Anne Arundel County Police Department Detective Johnathan Vandyke and his drug detecting canine partner "Miki" conducted a scan of the package. The drug detecting canine positively alerted for the presence of a controlled substance within the package. USPI Johnson with this information obtained a warrant for the parcel package. On that same day, USPI Johnson in the presence of Special Agent (SA) Jacqueline Abadir and myself executed the search and seizure warrant of the package labeled for delivery to 1001 E. Patuxent Drive La Plata, Maryland,

20646.  A search of the package revealed a glass container containing a white candle wrapped in blue bubble wrap.  USPI Johnson removed the glass container from the blue bubble wrap.  USPI Johnson then removed the white candle from the glass container and cut open the candle exposing suspected crystal methamphetamine within the core of the candle.  USPI Johnson field tested the suspected crystal methamphetamine using the Tru-Narc device.  The Tru-Narc device gave a positive field test for methamphetamine.  Approximately 100.94 grams of suspected crystal methamphetamine was recovered from within the candle.  The 100.94 grams of suspected crystal methamphetamine was analyzed by the DEA Mid-Atlantic Research Laboratory and found to be approximately 95% pure methamphetamine.  USPI Johnson removed 10.139 grams of crystal methamphetamine from the original 100.94 grams of methamphetamine for the purposes of a controlled delivery of the parcel package.  USPI Johnson returned 10.139 grams of crystal methamphetamine into the parcel box and resealed the box for the purposes of delivery to 1001 E. Patuxent Drive La Plata, Maryland on February 21, 2020.  The 10.139 grams of suspected crystal methamphetamine was analyzed by the DEA Mid-Atlantic Research Laboratory and found to be approximately 97% pure methamphetamine.

<u>Parcel Delivery and Search of 1001 E. Patuxent Drive, La Plata, Maryland</u>

25.　On February 21, 2020, United States Magistrate Judge Timothy J. Sullivan of the U.S. District Court for the District of Maryland issued a warrant for 1001 E. Patuxent Drive, La Plata, Maryland, 20646.

26.　On February 21, 2020, at approximately 12:31 p.m., USPI Johnson while in an undercover capacity parked the USPS delivery vehicle in front of 1001 E. Patuxent Drive, La Plata, Maryland, 20646.  USPI Johnson with parcel package (USPS Tracking #:9505512396520049615256) in hand containing 10.139 grams of the original 100.94 grams of

methamphetamine went to the front door of 1001 E. Patuxent Drive, La Plata, Maryland, 20646. USPI Johnson knocked on the front door. The front door was answered and opened by CARLIN. TFO Ja'Von Johnson and myself, observed USPI Johnson hand CARLIN the package containing the methamphetamine. CARLIN took custody of the parcel package and closed the front door taking the package inside 1001 E. Patuxent Drive, La Plata, Maryland, 20646. Charles County Swat team responded to 1001 E. Patuxent Drive, La Plata, Maryland and executed the anticipatory warrant shortly after CARLIN took possession of the package and closed the door. Upon entry to the residence, CARLIN was located in the main level hallway. The parcel package was located in the master bedroom on the floor. This master bedroom was later identified as CARLIN's bedroom.

Interview of CARLIN

27. On February 21, 2020, law enforcement advised CARLIN that a search warrant for her residence was obtained and would be executed. CARLIN first asked if she could contact her lawyer before she spoke with law enforcement. SA Kendrah Peterson provided CARLIN with a mobile phone, and CARLIN placed a call to her attorney. After CARLIN spoke with her lawyer, she stated she was willing to speak to law enforcement. SA Kendrah Peterson in the presence of TFO Ray D. Haney read CARLIN her Miranda rights which CARLIN waived. CARLIN agreed to speak to law enforcement and wrote a signed statement acknowledging that she first asked to speak to her attorney, but later decided to speak with TFO Ray D. Haney and SA Kendrah Peterson. CARLIN stated she knew law enforcement was at her residence because of the package of methamphetamine which she received in the mail.

28. CARLIN stated that she purchased the methamphetamine from a site called the "yellow brick road" on the "dark net." CARLIN said that she used the "TOR" browser application

to access the "dark net." CARLIN said she did not recall the moniker of the person she purchased the methamphetamine from on the "yellow brick road" site but it was the same moniker that she had used several times recently. CARLIN stated she paid $659.00 for the package that she received right before the search warrant was executed. CARLIN stated the package was supposed to contain three (3) to (4) ounces of methamphetamine. CARLIN stated that she used Bitcoin to pay the $659.00 through a Bitcoin application either on her phone or laptop.

## CONCLUSION

27. Based upon the foregoing, I submit that there is probable cause to believe that, from at least in and around April 2019, and continuing thereafter up to and including February 2020, the exact dates being unknown, within the Eastern District of Virginia and elsewhere, the defendant, GINGER CARLIN, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with others, both known and unknown to unlawfully, knowingly and intentionally distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Respectfully submitted,

Task Force Officer Matthew Albertson
Drug Enforcement Administration

Subscribed and sworn to in accordance with
Fed. R. Crim. P. 4.1 by telephone on April 27, 2022.

Theresa C. Buchanan
Digitally signed by Theresa C. Buchanan
Date: 2022.04.27 15:03:13 -04'00'

The Honorable Theresa C. Buchanan
United States Magistrate Judge